IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RONNIE LEE BROWN, #116308, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:13-CV-815-WHA |
| | ) | (WO) |
| | ) | |
| CYNTHIA DILLARD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION AND PROCEDURAL HISTORY

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by

Ronnie Lee Brown ("Brown"), an indigent state inmate.  *Doc. No. 1*.[1]  In the complaint,

Brown challenges the five-year set off date assigned for his next parole consideration as

violative of the Ex Post Facto and Bill of Attainder Clauses.  Brown also argues that the

actions of the defendants deprived him of due process, violated his equal protection rights

and subjected him to cruel and unusual punishment.  Finally, Brown complains that the

statute governing parole is unconstitutionally vague as it permits total discretion by parole

board members in determining which inmates to release on parole.  The defendants in this

---

[1] Although the Clerk of this court stamped the complaint "received" on November 5, 2013, Brown certified that he placed the complaint in the mail on October 25, 2013.  *Complaint - Doc. No. 1* at 12.  The law is well settled that a pro se inmate's complaint is deemed filed the date it is delivered to prison officials for mailing.  *Houston v. Lack,* 487 U.S. 266, 271-272 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993).  "Absent evidence to the contrary in the form of prison logs or other records, [this court] must assume that [the instant complaint] was delivered to prison authorities the day [Brown] signed it." *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001).  In light of the foregoing, the court considers October 25, 2013 as the date of filing.

cause of action are Cynthia Dillard, the Executive Director of the Alabama Board of Pardons and Paroles; Eddie Cook, Phil Bryant and Sandra Cochran, assistant executive directors for the parole board; and Bill Wynne, Robert Longshore and Cliff Walker, members of the Alabama Board of Pardons and Paroles.  Brown seeks issuance of a declaratory judgment, injunctive relief and monetary damages.

The defendants filed a special report, supplemental special report and supporting evidentiary materials addressing Brown's claims for relief.  In these filings, the defendants deny they acted in violation of Brown's constitutional rights during the parole consideration process and in making the determination to deny parole.  Upon receipt of the defendants' special reports, the court issued an order directing Brown to file a response to the reports, including affidavits or statements made under penalty of perjury and other evidentiary materials. *Order of January 30, 2014 - Doc. No. 28* at 2.  This order specifically cautioned Brown that unless "**sufficient legal cause**" is shown within ten days of entry of this order "**why such action should not be undertaken**, the court may at any time [after expiration of the time for his filing a response to this order] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with law." *Id*. 2-3.  Pursuant to this order, the court deems it appropriate to treat the defendants' reports as a motion for summary judgment.  Thus, this case is now pending on the defendants' motion for summary judgment.

Upon consideration of the defendant's motion for summary judgment, the evidentiary materials filed in support thereof, the sworn complaint and the plaintiff's response to the reports, the court concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir.

---

[2]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed. R. Civ. P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*. "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Despite these stylistic changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

1995) (moving party has initial burden of showing there is no genuine dispute of material

fact for trial). The movant may meet this burden by presenting evidence indicating there

is no dispute of material fact or by showing that the nonmoving party has failed to present

appropriate evidence in support of some element of its case on which it bears the ultimate

burden of proof. *Celotex*, 477 U.S. at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of

any genuine dispute of material fact with respect to the claims presented by the plaintiff.

Based on the foregoing, the burden shifts to the plaintiff to establish, with appropriate

evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v.

Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R.

Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly

address another party's assertion of fact by [citing to materials in the record including

affidavits, relevant documents or other materials] the court may . . . grant summary

judgment if the motion and supporting materials -- including the facts considered

undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal

quotation marks omitted) (Once the moving party meets its burden, "the non-moving party

must then go beyond the pleadings, and by its own affidavits [or statements made under

penalty of perjury], or by depositions, answers to interrogatories, and admissions on file,"

demonstrate that there is a genuine dispute of material fact.). This court will also consider

"specific facts" pled in a plaintiff's sworn complaint when considering his opposition to

summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir.

2014).   A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ.for Bibb Cty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of [parole] authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  To proceed beyond the summary judgment stage, an inmate-plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e).  "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Anderson*, 477 U.S. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A

plaintiff's "conclusory assertions . . ., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment. . . ."); *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (summary judgment appropriate where no genuine dispute of material fact exists).  At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute]

of material fact exists." *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children and Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. ZenithRadio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a

requisite material fact); *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Brown has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

### III.  IMMUNITY

### A.  Official Capacity Claims

Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252

(1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe Cty.*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

## B.  Individual Capacity Claims

To the extent Brown seeks monetary damages from the defendants for actions relative to the parole consideration process and/or the denial of parole, he is likewise entitled to no relief.  This Circuit has long recognized that parole board officials are entitled to quasi-judicial immunity from suits requesting damages based upon decisions to grant, deny or revoke parole.  *Fuller v. Georgia State Bd. of Pardons and Parole*, 851 F.2d 1307 (11th Cir. 1988); *Cruz v. Skelton,* 502 F.2d 1101, 1101-02 (5th Cir. 1974).  All of the actions about which Brown complains arose during proceedings resulting in the denial of parole.  Under these circumstances, the challenged actions are inextricably intertwined with the decision-making authority exercised by the defendants and the defendants are therefore immune from damages sought against them in their individual capacities.

## IV.  THE STATUTE OF LIMITATIONS

Brown presents claims challenging actions which occurred outside the applicable statute of limitations. Specifically, Brown alleges that since the 2001 adoption of a potential five-year set off for parole consideration, members of the parole board have used the increased set off period in scheduling his parole consideration dates. The evidentiary materials filed in this case indicate that upon denying Brown parole in 2002 and 2007, parole officials applied the amended five-year set off period to determine his subsequent parole consideration date. *Def.'s Exh. B to the Special Report - Doc. No. 25-2*; *Def.'s Exh. C to the Special Report - Doc. No. 25-3*. The defendants assert that those claims relative to denials of parole and parole consideration set offs which occurred on or before October 24, 2011, are barred by the statute of limitations applicable to § 1983 actions filed by an inmate in this court. *Def.'s Answer and Special Report - Doc. No. 25* at 11-12 ("The Parole Board's rules, regulations and procedures, about which Plaintiff complains, were adopted in 2001 and first applied to his case in 2002 when he was denied parole and set-off 5-years. Clearly Plaintiff has waited over 10-years since being made aware that the Parole Board's 5-year set-off rule was being applied to his case [and his claims challenging set offs assigned in 2002 and 2007 are time barred].").

> All constitutional claims brought [by an inmate] under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought. *Wilson v. Garcia*, 471 U.S. 261, 275-76, 105 S.Ct. 1938, 1946-47, 85 L.Ed.2d 254 (1985). [The plaintiff's] claim was brought in Alabama where the governing limitations period is two years. Ala. Code § 6-2-38; *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989) (en banc). Therefore, in order to have his claim heard, [the plaintiff is] required to bring it within two years from the date the limitations period began to run.

*McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008).

In the complaint, Brown references parole consideration proceedings and adverse decisions that transpired prior to October 24, 2011. The tolling provision of *Ala. Code* § 6-2-8(a) is inapplicable.[3] Thus, the statute of limitations with respect to actions which occurred on or before October 24, 2011, expired before Brown filed the instant complaint and these claims are therefore barred by the statute of limitations.

## V. DISCUSSION OF TIMELY CLAIMS

### A. Material Facts

Brown is currently confined in the custody of the Alabama Department of Corrections on four concurrent sentences of life imprisonment imposed upon him in 1976 by the Circuit Court of Jefferson County, Alabama, for convictions of first degree robbery and three counts of murder. The parole decision timely challenged by Brown occurred on October 30, 2012, when defendants Walker and Wynne voted to deny Brown parole. *Exh. D to the Defendants' Special Report (Report of Action by the Board) - Doc. No. 25-4.* The record demonstrates that the denial of parole occurred because the voting members of the Parole Board did not believe that Brown constituted an acceptable risk for release on parole. *Exh. E to the Supplemental Special Report (Aff. of Cliff Walker) - Doc. No. 27-1 at 1-2; Exh. F to the supplemental Special Report (Aff. of Bill Wynne) - Doc. No. 27-2 at 1-2.* The board members scheduled Brown's next parole consideration for October of 2017. *Exh. D to the Special Report (Report of Action by the Board) - Doc. No. 25-4.*

---

[3]If an individual who seeks to commence a civil action "is, at the time the right accrues . . . insane" the running of the limitation period is tolled until termination of this condition not to exceed "20 years from the time the claim or right accrued." *Ala. Code* § 6-2-8(a).

## B.  Respondeat Superior

Defendants Walker and Wynne are the only defendants who in any manner participated in the decision to deny Brown parole in October 2012.  Thus, the claims against the remaining individual defendants entitle Brown to no relief as these claims are based on theories of respondeat superior and/or vicarious liability.

The law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates [or co-workers] under the theory of *respondeat superior* [or vicarious liability]. . . .  *Robertson v. Sichel,* 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ('A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed [with,] by or under him, in the discharge of his official duties').  Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler Cty.*, 268 F.3d 1014, 1035 (11th Cir. 2001) (A supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999),

citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677, 129 S.Ct. 1949. Thus, liability for actions of defendants Walker and Wynne could attach to the other named defendants only if these other defendants "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Brown, however, has presented no evidence, and the court cannot envision the existence of any evidence, that would create a genuine issue of disputed fact with respect to the claims lodged against defendants Dillard, Cook, Bryant, Cochran and Longshore. The only evidentiary materials filed in this case which could be presented at trial demonstrate that these defendants did not personally participate in or have any involvement with the claims on which Brown seeks relief. In light of the foregoing, defendants Dillard, Cook, Bryant, Cochran and Longshore can be held liable for actions of defendants Walker and Wynne only if their actions bear a causal relationship to the purported violations of Brown's constitutional rights.

To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of defendants Dillard, Cook, Bryant, Cochran and Longshore, Brown must present sufficient evidence which would be admissible at trial of either "a history of

widespread abuse [that] put[] [these defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so . . ." or "a . . . custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or . . . facts [that] support an inference that [these defendants] directed [defendants Walker and Wynne] to act unlawfully, or knew that [they] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Brown has failed to meet this burden.

The record before the court contains no evidence to support an inference that defendants Dillard, Cook, Bryant, Cochran and Longshore directed Walker and Wynne to act unlawfully or knew that they would act unlawfully and failed to stop such action. In addition, Brown has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which these defendants failed to take corrective action. Finally, it is clear that the challenged actions did not occur pursuant to a policy enacted by Dillard, Cook, Bryant, Cochran and Longshore. Thus, the requisite causal connection does not exist between the actions challenged by Brown and the conduct of the aforementioned defendants and liability under the custom or policy standard is not warranted. Summary judgment is therefore due to be granted in favor of defendants Dillard, Cook, Bryant, Cochran and Longshore.

### C.  Due Process

Brown seeks relief for an alleged lack of due process afforded to him during the parole consideration process which resulted in the denial of parole on October 30, 2012, and in the decision by the board members to set his next parole consideration in October 2017.  In support of this claim, Brown alleges that application of the five-year set off in scheduling his subsequent parole consideration date and use of unencumbered discretion by defendants Walker and Wynne in determining his suitability for release on parole deprived him of due process.

In response to Brown's claims, defendant Walker states as follows:

". . . .  [As a Member of the Alabama Board of Pardons and Paroles,] I, along with other Board members, hold parole consideration hearings for the State of Alabama.  On 10-30-2012 I participated in the Board's parole consideration for Ronnie Brown. . . .  Mr. Brown was denied parole and reset for further parole consideration in October of 2017.  I deny Mr. Brown's conclusory allegation that I based my decision upon information that he had committed a new crime.  have the discretionary decision-making authority of whether or not to grant parole or deny parole during parole consideration hearings conducted in open public meetings.

'In parole consideration hearings the Board is required to give notice to certain elected officials and victims and give them the opportunity to present their views concerning the matter at an open public meeting.  Further, the Board must consider the inmate social and criminal record prior to making their decision.  This review includes the details of the offense, the impact to the victim, potential for future violence, and community attitude.  The Board also considers where the inmate will work and live, if paroled.

'After the review and conducting the open public meeting the Board must be of the opinion that the person being considered can go out of prison and reasonably be expected to not violate the law; and of the opinion that [the inmate's] release will not be incompatible with the welfare of society.  Mr. Brown's consideration hearing did not result in my being of either opinion therefore I voted to deny parole.

'I have reviewed the claims Mr. Brown has made in his lawsuit.  I deny that I made my decision to deny him parole base[d] upon information

of a new crime he has committed.  The Alabama Board of Pardons and Paroles is not [at this time] required to state the reasons for denying parole and by practice refrain from doing so.  As a result Mr. Brown does not know why I or any other Board member voted to deny him parole."

*Exh. E to the Supplemental Special Report (Aff. of Cliff Walker) - Doc. No. 27-1* at 1-2;

*Exh. F to the Supplemental Special Report (Aff. of Bill Wynne) - Doc. No. 27-2* at 1-2 (same).

"The Alabama [parole] statute . . . calls for discretionary rather than mandatory action on the part of the board.  The law directs the board to consider a number of factors in making their determination, which is a subjective rather than objective determination.  It does not contain any language that mandates parole. . . .  When the statute is framed in discretionary terms there is not a liberty interest created. . . .  Alabama parole statutes do not create a liberty interest [in parole]."  *Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982).  This court's exhaustive review of the history of the Alabama statute governing release on parole establishes that from its inception the statute has been framed in discretionary terms.[4]  The law is well settled that "the mere possibility of parole provides simply 'a hope that is not protected by due process. . . .' . . .  [In addition], the Alabama parole statute frames the Parole Board's authority in discretionary terms, and thus does not

---

[4]Section 15-22-26 of the Alabama Code effective in September of 2012 governed the authority of the Alabama Board of Pardons and Paroles to grant parole to inmates.  The pertinent portion of this statute reads as follows:

> No prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but **only if the Board of Pardons and Paroles is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society**.  If the board shall so determine, such prisoner shall be allowed to go upon parole outside of prison walls and enclosure upon such terms and conditions as the board shall prescribe. . . .

*Ala. Code* § 15-22-26 (emphasis added).  The statute is clear that the decision to grant parole is within the sole discretion of members of the parole board and that parole is permitted only when board members, in their opinion, deem an inmate suitable for release on parole.

create for Alabama prisoners a protected liberty interest in the expectation of parole.  *See Thomas v. Sellers,* 691 F.2d 487 (11th Cir. 1983)."  *Ellard v. Alabama Bd. of Pardons and Paroles*, 824 F.2d 937, 942 (11th Cir. 1987).

To the extent Brown contends that applicable statutes and regulations create a protected liberty interest in the procedures related to parole consideration, he is likewise entitled to no relief as this claim is foreclosed by *Slocum.*  In *Slocum*, the Eleventh Circuit deemed such a "unique theory . . . without merit."  678 F.2d at 942.  The relevant portion of the Court's opinion reads as follows:

> Petitioner argues that even if there is no statutorily created liberty interest in parole, particular [statutory parole] provisions . . . create a protectable entitlement to parole consideration.  Specifically, petitioner cites the requirement . . . that parole consideration "shall be automatic" upon the expiration of a set period of confinement and language . . . that the board include in the parole file "as complete information as may be practically available. . . ."  If these provisions create a protectable expectancy in parole consideration, petitioner argues that the consideration must comport with due process standards.  Petitioner's unique theory is without merit.  Unless there is a liberty interest in parole, the procedures followed in making the parole determination are not required to comport with standards of fundamental fairness.  *See Brown v. Lundgren*, 528 F.2d 1050 (5th Cir.), *cert. denied*, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976).  In *Staton v. Wainwright*, 665 F.2d 686 (5th Cir. 1982) (former Fifth Circuit decision), the court concluded that no liberty interest in parole was created by the Florida statutes. The court, therefore, rejected appellant's claim that his due process rights were violated when he did not receive an initial parole interview within the time required under the parole laws.  The analysis in *Staton* was adopted by the Eleventh Circuit in *Hunter v. Florida Parole and Probation Commission*, 674 F.2d 847 (11th Cir. 1982), where the court held that no due process violation could be shown through an allegation that the Florida Parole and Probation Commission improperly calculated a prisoner's "presumptive parole release date."  Accordingly, in the instant case petitioner['s] . . . allegation that the . . . parole board has not accorded him adequate parole consideration does not entitle him to [relief].

*Slocum*, 678 F.2d at 941-942.

As is clear from the foregoing, Brown does not possess a liberty interest in being granted parole that is protected by the Due Process Clause of the Constitution. *Heard v. Georgia State Bd. of Pardons and Paroles*, 222 F. App'x 838, 840 (11th Cir. 2007); *Monroe v. Thigpen*, 932 F.2d 1437, 1441 (11th Cir. 1991); *Ellard*, 824 F.2d at 941-942; *Thomas*, 691 F.2d at 488-489.  Absent the existence of a constitutionally protected liberty interest in parole, "the procedures followed in making the parole determination are not required to comport with the standards of fundamental fairness."  *O'Kelley v. Snow*, 53 F.3d 319, 321 (11th Cir. 1995); *Slocum*, 678 F.2d at 942; *Orellana v. Kyle*, 65 F.3d 29, 32 (5th Cir. 1995) (because applicable Texas parole statutes confer "no liberty interest in obtaining parole" Texas inmate could not "complain of the constitutionality of procedural devices attendant to parole decisions.").  Thus, the procedural due process protections of the Fourteenth Amendment do not apply to either the parole decision making process, *Thomas*, 691 F.2d at 488-489, or the parole consideration process.  *Slocum*, 678 F.2d at 942 (failure to provide parole review within time required under parole rules or properly calculate presumptive date of release on parole does not constitute a violation of due process).

Nevertheless, even though there is no liberty interest involved, a parole board may not engage in "flagrant or unauthorized action."  *Thomas*, 691 F.2d at 489.  Defendants Walker and Wynne maintain they acted in accordance with the Constitution, federal law, state law and applicable administrative regulations when they denied parole to Brown.

They also advise that the decision to deny parole was based on their determination that Brown did not present an acceptable risk for release on parole.[5]  The decision of the parole board members demonstrates a reasonable and appropriate action, *Hendking v. Smith*, 781 F.2d 850, 853 (11th Cir. 1986), rationally related to the legitimate state interest of ensuring that only those inmates best suited for parole are actually granted this privilege.  *Cf. Conlogue v. Shinbaum*, 949 F.2d 378 (11th Cir. 1991); *see also Thornton v. Hunt*, 852 F.2d 526 (11th Cir. 1988).  Brown has therefore failed to present any evidence indicating arbitrary or capricious actions on the part of the Alabama Board of Pardons and Paroles or its members.  Consequently, summary judgment is due to be granted in favor of the defendants with respect to each of Brown's due process claims.

### D.  False Information

Brown makes the conclusory allegation that defendants Walker and Wynne relied on false information, *i.e.*, a "new crime" he committed, in denying him parole when he "has never been out [of prison to commit] a new crime."  *Compl. - Doc. No. 1* at 7.  Initially, contrary to Brown's assertion, the mere fact he has not been released from prison since his convictions in 1976 does not preclude future criminal activity as inmates commonly

---

[5]Alabama law vests complete discretion in the Alabama Board of Pardons and Paroles "of determining what prisoners may be released on parole and when and under what conditions" parole will be granted.  *Ala. Code* § 15-22-24(a). The law further gives the parole board total discretion in determining whether an inmate should be granted parole. *Ala.Code* § 15-22-26 (A prisoner shall not be released on parole unless "the Board of Pardons and Paroles is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society[.]").  The Alabama parole statutes governing standards for parole of inmates are typical parole statutes which vest absolute discretion in the Alabama Board of Pardons and Paroles.  *Ellard*, 824 F.2d at 942; *Thomas*, 691 F.2d at 489.  The Alabama parole scheme has been reviewed by the Eleventh Circuit Court of Appeals on numerous occasions with that court acknowledging the constitutionality of the discretion accorded the Board and continuously stressing "that absent flagrant or unauthorized action by a parole board the discretionary power vested in a parole board will not be interfered with by the Federal courts."  *Thomas*, 691 F.2d at 489.  As the findings set forth herein make clear, there has been no flagrant or unauthorized action by the parole board or its members warranting interference by this court.

commit and are convicted of crimes while incarcerated.  In addition, defendants Walker and Wynne do not admit that the information they utilized in the parole decision-making process was false and categorically deny they relied on a "new crime" or any known false information when considering Brown for release on parole.  *Exh. E to the Supplemental Special Report (Aff. of Cliff Walker) - Doc. No. 27-1* at 2; *Exh. F to the Supplemental Special Report (Aff. of Bill Wynne) - Doc. No. 27-2* at 2.  Instead, Walker and Wynne aver that they conducted an individualized assessment of Brown's suitability for release on parole, which included evaluation of his criminal record, the details and nature of his offenses, including the three murder convictions, his "potential for future violence, and community attitude [towards him,]" and, based on this assessment, were not of the opinion that there was a reasonable probability Brown could act in accordance with the law while on parole or that his release would be compatible with the welfare of society.  *Id.* at 1-2.

In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the Eleventh Circuit held that reliance on ***admittedly false information*** to deny a prisoner consideration for parole was arbitrary and capricious treatment violative of the Constitution.  The appellate court, however, carefully distinguished its holding in *Monroe* from its prior decision in *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir.), *cert. denied*, 459 U.S. 1043 (1982).

> Our holding today does not conflict with our earlier holding in *Slocum*, *supra*.  In *Slocum*, the plaintiff, who had been denied parole, made the conclusory allegation that the Board must have relied upon erroneous information because otherwise the Board would surely have granted him parole.  *Slocum*, 678 F.2d at 941.  The plaintiff then sought to assert a due process right to examine his prison file for the alleged errors.  Unlike the

> instant case, in *Slocum* the state did not admit that it had relied upon false
> information in denying parole nor did the plaintiff present any evidence that
> his prison file even contained any false information. We held in *Slocum* that
> prisoners do not state a due process claim by merely asserting that erroneous
> information may have been used during their parole consideration. *Id.* at
> 942. We also determined that prisoners do not have a due process right to
> examine their prison files as part of a general fishing expedition in search of
> false information that could possibly exist in their files. *Id*. In the case at
> bar, we are confronted with prison authorities who admit that information
> contained in Monroe's files is false and that they relied upon such
> information, at least in part, to deny Monroe parole and to classify him as a
> sex offender. As we stated, the parole statute does not authorize state
> officials to rely on knowingly false information in their determinations.
> *Thomas [v. Sellers]*, 691 F.2d [487] at 489 [(11th Cir. 1982)].

*Monroe*, 932 F.3d at 1442. *Slocum* controls the disposition of the instant false information

claim.

Defendants Walker and Wynne maintain that the information on which they relied

to deny Brown parole is true and that reliance on this information did not infringe on any

of Brown's constitutional rights. Of specific importance, there is no admission by the

defendants that the information utilized in denying Brown parole is false, incorrect or

erroneous. Brown has failed to come forward with any evidence which indicates that the

defendants knowingly used false information during the parole consideration process.

Moreover, Brown's purely speculative assertion regarding the potential use of false

information does nothing more than raise the possibility that information in his records

may be false and this mere possibility fails to provide a basis for relief. *Monroe*, 932 F.2d

at 1142; *Jones v. Ray*, 279 F.3d 944 (11th Cir. 2001) ("[P]risoners cannot make a

conclusory allegation regarding the use of [false] information as the basis of a due process

claim.").

The record in this case establishes that the defendants did not rely on ***admittedly*** false information in their decision to deny Brown parole.  Consequently, the plaintiff is entitled to no relief as a matter of law and entry of summary judgment in favor of defendants Walker and Wynne is appropriate.

### E.  Ex Post Facto and Bill of Attainder

Brown challenges the retroactive application of administrative rules adopted after he began service of his current term of incarceration which altered the potential frequency of setting parole consideration dates from every three years to every five years.  *Compl.- Doc. No. 1* at 3, 9-10.  Brown argues that use of the amended rules implicates the protections guaranteed by the Ex Post Facto and Bill of Attainder Clauses of the United States Constitution.  The Ex Post Facto Clause directs that the government may not apply a law retroactively that "inflicts a greater punishment, than the law annexed to the crime, when committed."  *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798).  Under the Bill of Attainder Clause, legislatures are forbidden to engage in "[l]egislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial." *United States v. Brown*, 381 U.S. 437, 448-49 (1965).  Imposition of punishment upon Brown via the amended rules is an essential element to both the ex post facto and bill of attainder challenges pending in this case.  Differences among the Ex Post Facto and Bill of Attainder Clauses with respect to the elements of punishment, if any, are not relevant here, and the court will therefore subject these challenges to the same analysis.

The Ex Post Facto and Bill of Attainder Clauses bar "enactments which, by retroactive operation, increase the punishment for a crime after its commission." *Garner v. Jones*, 529 U.S. 244, 249 (2000). An amended law or regulation must create a significant risk of increasing the punishment imposed upon an inmate in order for the amendment to run afoul of this constitutional provision. *Id.* at 255. Decisions with respect to whether a parole regulation violates either the Ex Post Facto or Bill of Attainder Clause when applied to inmates entitled to more frequent parole consideration at the time they committed their crimes must be made on a case-by-case basis. *Harris v. Hammonds*, 217 F.3d 1346, 1350 (11th Cir. 2000). In making these decisions, a court is required to consider evidence of the general operation of the parole system and any other evidence produced by a prisoner in support of his assertion that the regulation "'as applied to his sentence,' created a significant risk of increasing his punishment." *Harris*, 217 F.3d at 1350 (quoting *Garner,* 529 U.S. at 255); *Jones v. Ray*, 279 F.3d 944, 946 -947 (11th Cir. 2001).

In *Garner*, the Court addressed whether an amended Georgia rule increasing parole consideration hearings from every three years to every eight years violated the Ex Post Facto Clause, a holding equally applicable to a claim raised under the Bill of Attainder Clause. The Court determined that extending the time for a scheduled parole consideration hearing did not prevent the exercise of discretion by the Georgia Board of Pardons and Paroles during the period between parole reviews, because the agency's policies permit the Board, in its discretion, to schedule expedited reviews in the event of a change in circumstances or new information. *Garner*, 529 U.S. at 256.

A determination of whether retroactive application of a particular change in a law or regulation governing parole respects the prohibition of ex post facto and bill of attainder legislation is often a question of particular difficulty when the discretion vested in the parole board is taken into account. *Id.* at 249. In deciding whether a parole regulation prevents a parole board's exercise of discretion, the court may consider the implementing regulations, the statutory structure and the board's representations regarding its operations. *Id.* at 254. "The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience." *Id.* at 253.

As previously determined, state law gives the Alabama Board of Pardons and Paroles total discretion in determining whether an inmate should be granted parole, *Ala. Code* § 15-22-26, "and when and under what conditions" parole will be granted, *Ala. Code* § 15-22-24(a). Applicable state law also requires that the parole board consider the public interest in every case. *Ala. Code* § 15-22-26. This unconditional discretion, however, does not displace the protections of the Ex Post Facto and Bill of Attainder Clauses. *Garner*, 529 U.S. at 250. The proper inquiry in cases challenging retroactive application of new parole policies or statutes is whether the retroactive change creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id*. (internal quotation marks and citation omitted).

The applicable rules and regulations governing the frequency of parole consideration dates are found in the operating procedures for the Alabama Board of Pardons and Paroles. Article 6, § 11, *Rules, Regulations and Procedures of the Board of*

*Pardons and Paroles*, vests the Board with discretion to "determine whether and when the case shall next be docketed for consideration, not to exceed five (5) years."[6]  *Exh. A to the Special Report - Doc. No. 26-8* at 11.  Article 2, § 7 of these rules provides that, after a denial of parole, "the [Review] Committee may consider earlier scheduling, but such review shall not begin earlier than eighteen (18) months after the Board has denied or revoked parole."[7]  *Rules, Regulations, and Procedures*, ALABAMA BOARD OF PARDONS AND PAROLES, http://www.pardons.alabama.gov./Rules.aspx#article2 (last visited April 19, 2016).  In addition, the opportunity for an expedited parole review is likewise available to those inmates who have served at least five years in prison as Article 2, § 1 of the rules and regulations directs that an inmate in this situation "may . . . request once per calendar year, [that parole officials] . . . review the inmate's progress to determine whether it may be appropriate to schedule earlier parole consideration.  Such a rescheduling may be granted only for good cause shown and circumstances bearing on [the inmate's] probability to succeed on parole, not merely because the inmate is following the rules in prison."  *Id.* Thus, the rule changes are designed to facilitate better exercise of the Board's discretion. *Garner*, 529 U.S. at 254-255.

---

[6] The initial operating procedure governing the scheduling of parole consideration dates for inmates, *Ala. Adm. Code* § 640-X-2.02(8) (1982, revised 1986), provided that upon denial of parole to an inmate "the Board will determine when [the inmate's] case is to be reset but in no event shall it be reset for more than three years from the date of denial."  The increase in the reset date from no "more than three years" from denial of parole to the current five-year maximum originally occurred in adoption of the 2001 rules and regulations at Article 6, § 11.  The parole board retained the five-year set off in its later amendments to the operating procedures.

[7] The 2001 amendment to the regulation in Article 2, § 8 initially allowed the "earlier scheduling" of parole consideration at twenty-four months, rather than eighteen months, after the denial of parole as permitted by the subsequent amendments.

It is clear that the law changing the frequency of parole consideration dates from three years to five years does not extend the term of imprisonment imposed upon Brown nor increase the level of risk that he will serve a longer term of imprisonment.  Specifically, prior to this change, the parole board never guaranteed Brown that he would be unconditionally released before completion of his life sentence.  Additionally, eighteen months after the denial of parole, Brown retains the opportunity under the current regulation to submit information about changed circumstances bearing on his suitability for release on parole and, therefore, he could be scheduled for consideration at an earlier date.  Hence, even if the risk of an increased term of incarceration develops in Brown's case, he may, upon a showing of "good cause . . . and circumstances bearing on his probability to succeed on parole," seek an earlier review before the five-year reconsideration interval expires.  Article 2, § 1, *Rules, Regulations and Procedures of the Board of Pardons and Paroles*.

Brown has presented no evidence which demonstrates that the regulations at issue create a significant risk of increased punishment from that imposed for his robbery and murder convictions.  Moreover, Brown possesses the ability to petition the parole board for an earlier parole consideration date.  Based on the foregoing, the court concludes that the change about which Brown complains did not lengthen his actual term of imprisonment.  Thus, Brown's challenge to the potential two year increase in time between parole consideration dates does not rise to the level of a constitutional violation and provides no basis for relief in this 42 U.S.C. § 1983 action.  *Garner*, 529 U.S. at 253-256;

26

*Olstad v. Collier*, 326 F. App'x 261 (5th Cir. 2009) (Retroactive imposition by parole board of changes in parole policy allowing a potential five year set off until prisoner's "next parole review presents no ex post facto [or bill of attainder] violation because its effect on increasing [plaintiff's] punishment is merely conjectural. . . .  The [Texas Parole] Board is vested with discretion as to how often to set [plaintiff's] date for reconsideration, with five years for the maximum; the Board is also permitted to adjust subsequent review dates and conduct a special review if [plaintiff's] status changes."); *Creel v. Kyle*, 42 F.3d 955, 957 (5th Cir.), *cert. denied*, 514 U.S. 1070 (1995) (change in rules that lengthens period of time between parole reconsideration hearings applied retroactively by the parole board not violative of the Ex Post Facto Clause).  The defendants are therefore entitled to summary judgment on Brown's Ex Post Facto and Bill of Attainder challenges to the scheduling of parole consideration dates.

### F.  Cruel and Unusual Punishment

Brown contends that the denial of parole and the five-year set off for subsequent parole consideration constituted cruel and unusual punishment.  *Compl. - Doc. No. 1* at 10. This claim entitles Brown to no relief.

The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain.  *Rhodes v. Chapman*, 452 U.S. 337 (1981). Only actions which deny an inmate "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment's prohibition against cruel and unusual punishment.  *Id*. at 347; *see also Wilson v. Seiter*, 501 U.S. 294 (1991).  Neither an increase

of the set off time for parole consideration nor the denial of parole rises to the level of an

Eighth Amendment violation as either action is "merely a disappointment rather than a

punishment of cruel and unusual proportions." *Damiano v. Florida Parole and Probation*

*Comm'n*, 785 F.2d 929, 933 (11th Cir. 1986). Consequently, the defendants are entitled to

summary judgment on this claim.

### G.  Equal Protection

To the extent the complaint can be construed as raising a claim that defendants

Walker and Wynne exercised their "unbridled discretion" to discriminate against Brown

based on his race in violation of his equal protection rights, this claim provides no basis for

relief.

In order to establish a claim cognizable under the Equal Protection Clause, "a

prisoner must demonstrate that (1) 'he is similarly situated with other prisoners who

received' more favorable treatment; and (2) his discriminatory treatment was based on

some constitutionally protected interest such as race. *Damiano v. Fla. Parole & Prob.*

*Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986) (per curiam)." *Jones v. Ray*, 279 F.3d 944,

946-947 (11th Cir. 2001). Moreover, to succeed on an equal protection challenge, the

plaintiff must also demonstrate the existence of discriminatory intent; arbitrary application

of rules, regulations, policies or statutes without discriminatory intent is insufficient to

demonstrate a violation of the Equal Protection Clause. *Jones v. White*, 992 F.2d 1548,

1573 (11th Cir. 1993); *E & T Realty v. Strickland*, 830 F.2d 1107 (11th Cir. 1987).

> [O]fficial action will not be held unconstitutional solely because it results in
> a . . . disproportionate impact. . . .  Proof of . . . discriminatory intent or

> purpose is required to show a violation of the Equal Protection Clause. Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.

*Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). In a case such as this one, where the plaintiff challenges actions of parole officials, exceptionally clear proof of discrimination is required. *Fuller v. Georgia Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988). Evidence which merely indicates disparity of treatment is insufficient to show discriminatory intent. *McKleskey v. Kemp*, 481 U.S. 279 (1987).

Since this case is before the court on a properly supported motion for summary judgment from the defendants, Brown bears the burden of producing some probative evidence to show that the actions of defendants Walker and Wynne resulted from intentional discrimination. *Celotex*, 477 U.S. at 322-324; *Waddell*, 276 F.3d at 1279. Brown utterly and completely fails to meet this burden as he has offered no evidence identifying any other similarly situated inmate who received more favorable treatment from the defendants, *Brunskill v. Boyd*, 141 F. App'x 771, 776 (11th Cir. 2005), or otherwise demonstrating that the defendants subjected him to adverse treatment based on some constitutionally impermissible reason. In short, Brown sets forth no facts in support of his allegation of an equal protection violation. Even a liberal interpretation of Brown's *pro se* complaint does not reveal any factual basis for an equal protection claim. Furthermore, it is clear from the undisputed evidentiary materials that the defendants refused to grant

Brown parole based solely on their determination that he was not an acceptable candidate for release on parole. *Exh. E to the Supplemental Special Report (Aff. of Cliff Walker) - Doc. No. 27-1* at 1-2; *Exh. F to the Supplemental Special Report (Aff. of Bill Wynne) - Doc. No. 27-2* at 1-2.

In light of the foregoing, summary judgment is due to be granted in favor of the defendants on Brown's claim of unconstitutional discrimination.

## H. Constitutionality of State Statute

Section 15-22-26 of the Alabama Code governs the authority of the Alabama Board of Pardons and Paroles to grant parole to inmates. The pertinent portion of this statute reads as follows:

> No prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the Board of Pardons and Paroles is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society. . . .

*Ala. Code* § 15-22-26. Brown complains that this section of the Alabama Code is unconstitutionally vague and arbitrary as it provides "unbridled discretion in the Parole Board" and allows board members "to make predictions regarding an inmate's future conduct upon release" based on subjective beliefs. *Compl. - Doc. No. 1* at 8.

The statute challenged by Brown does not address constitutional freedoms or identify unlawful conduct but merely sets forth the standards that members of the parole board must follow prior to granting an inmate parole. Upon application of the void-for-vagueness doctrine, the court concludes that the challenged code section is not

unconstitutionally vague.  "A rule that does not reach constitutionally protected conduct is void for vagueness only if it is impermissibly vague in all its applications.  *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982).  The test is whether the enactment is substantially incomprehensible.  *Exxon Corp. v. Busbee,* 644 F.2d 1030, 1033 (5th Cir. May 1981), *cert. den.*, *Exxon Corp. v. Georgia Assn. of Petroleum Retailers*, 454 U.S. 932, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981)."  *Woodruff v. United States Dep't of Labor, Office of Workers Comp. Program*, 954 F.2d 634, 643, *rehearing denied*, 961 F.2d 224 (11th Cir. 1992).  The statute at issue is substantially comprehensible with respect to establishing the standards for release of inmates on parole.  The guidelines set forth in § 15-22-26 "provide explicit standards for those who apply them" and "give the person of ordinary intelligence a reasonable opportunity to know what is [required]."  *Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972).  The mere fact that the statute provides for utilization of discretion and reliance on personal opinion does not render it impermissibly vague or arbitrary.  As the Alabama Supreme Court correctly determined:

> [The inmate] contends that § 15-22-26 is unconstitutionally vague on its face or as it is administered by the Board of Pardons and Paroles. "A statute that does not concern First Amendment freedoms or the definition of criminal conduct may be declared unconstitutionally vague 'only if a person of ordinary intelligence, exercising common sense, can derive no rule or standard at all from the statute's language.' *Friday v. Ethanol Corp.*, 539 So.2d 208, 213 (Ala.1988)." *State v. Blake*, 642 So.2d 959, 962 (Ala.1994). Section 15-22-26 is a typical parole statute that gives the parole board total discretion in the granting of paroles. *Tedder v. Alabama Bd. of Pardons & Paroles*, 677 So.2d 1261, 1263 (Ala.Crim.App.), *cert. denied*, 518 U.S. 1008, 116 S.Ct. 2531, 135 L.Ed.2d 1054 (1996); *see also Thomas v. Sellers*, 691 F.2d 487, 488-89 (11th Cir. 1982). Because the statute provides that parole

may be granted at the board's discretion, it does not confer a liberty interest in parole that is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. E.g., *Tedder,* 677 So.2d at 1263. The discretion granted to the parole board by § 15-22-26 does not, however, make the statute vague; rather, it gives the board the authority to consider each parole application individually.

Section 15-22-26 . . . is not unconstitutionally vague on its face or as it is administered by the board; [the inmate's] contentions are meritless.

*Thompson v. Bd. of Pardons and Paroles*, 806 So.2d 374, 375 (Ala. 2001).

The Alabama parole statute governing standards for parole of inmates is a typical parole statute which vests total discretion in the Alabama Board of Pardons and Paroles. *Ellard*, 824 F.2d at 942; *Thomas*, 691 F.2d at 489.  There is nothing unconstitutionally vague about the statute.  Moreover, the Alabama parole scheme has been reviewed by the Eleventh Circuit Court of Appeals on numerous occasions with that court acknowledging the constitutionality of the discretion accorded the Board and continuously stressing "that absent flagrant or unauthorized action by a parole board the discretionary power vested in a parole board will not be interfered with by the Federal courts."  *Thomas*, 691 F.2d at 489. The record in this court establishes that there has been no "flagrant or unauthorized action" by the parole board.

## VI.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be DISMISSED with prejudice.

4. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before **May 4, 2016**, the parties may file objections to this Recommendation.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 20th day of April, 2016.


_____/s/____Wallace Capel, Jr._____
UNITED STATES MAGISTRATE JUDGE